# EXHIBIT F



# MUTUAL NON-DISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement (the "Agreement"), dated April __5__, 2012 (the "Effective Date"), is entered into by and between Samsung Electronics America, Inc., a New York corporation, acting on behalf of itself and its Affiliates, with offices located at 85 Challenger Road, Ridgefield Park, NJ 07660 (collectively "Samsung"), and Kannuu Pty Ltd., a corporation of Australia, acting on behalf of itself and its Affiliates, with offices located at 8111 LBJ Freeway, Suite 1440, Dallas, TX 75251 (collectively "Company").

Company and Samsung desire to disclose to one another certain Confidential Information (as defined in Section 1 of this Agreement) to further a business relationship between the parties ("the Business Purpose") and to protect such Confidential Information from unauthorized disclosure.

In consideration of the other party's disclosure of Confidential Information and the covenants and promises contained herein, each party agrees as follows:

1. This Agreement will apply to all Confidential Information disclosed by one party to the other party. For purposes of this Agreement, "Confidential Information" shall mean any information that has been identified as confidential or proprietary or reasonably appears to be proprietary or confidential in nature because of legends or other markings, the circumstances of disclosure, or the nature of the information itself. Confidential Information may be disclosed in writing or other tangible form (including on magnetic media) or by electronic, oral, visual or other means and may include Confidential Information of the disclosing party, an Affiliate of the disclosing party or a third party.

2. For purposes of this Agreement, an "Affiliate" shall mean an entity controlled by, controlling or under common control of Samsung or Company, as applicable, but only so long as such control exists. The cessation of such control shall not release an Affiliate of its obligation to comply with the terms and conditions of this Agreement for the period of time stated herein, nor release Company from its obligation to treat the Confidential Information of such Affiliate in accordance with this Agreement.

3. Each party agrees that for a period of five (5) years from the date of disclosure it will (i) hold the Confidential Information disclosed by the other party in confidence, (ii) not disclose such Confidential Information to any one other than the Representatives (as defined below) of the recipient, and (iii) not use such Confidential Information for any purpose except for the Business Purpose. Each party shall protect and prevent the unauthorized use, dissemination, or publication of the Confidential Information disclosed by the other party by using the same degree of care it would use in protecting its own confidential information. Notwithstanding anything to the contrary in the preceding two sentences, each party may disclose Confidential Information disclosed by the other party to it and its Affiliates' employees, directors, officers, attorneys, accountants, financial advisors, agents and contractors who have bona fide need to know and are subject to an obligation of confidentiality no less stringent than set forth in this Agreement (collectively, "Representatives"), but only to the extent necessary to carry out the Business Purpose. Each party will remain liable for any breach of this Agreement by its Affiliates or Representatives.

4. Company acknowledges the importance Samsung places on protecting the privacy of its customers and other end users ("End Users"). Accordingly, Company shall safeguard any individually identifiable data acquired from or about End Users, including without limitation, names, addresses, telephone number(s), email address(es) or credit information (collectively "End User Data"), against unauthorized access or use. Company acknowledges and agrees that all End User Data is the Confidential Information of Samsung and is subject to the terms and conditions of the NDA. Notwithstanding anything to the contrary herein, including Section 3 above, the obligation to safeguard End User Data shall not be limited in time; Company shall not use, sell, license, lease or otherwise transfer or disclose any End User Data to any third party; and Company shall not export such data to any location outside of the country in which Company acquired such data. Upon request from Samsung, Company shall promptly return to Samsung all End User Data in Company's possession. Company shall not retain any copies of such End User Data knowingly and voluntarily provided by End Users directly to Company in connection with Company's services or products.

5. Each party's obligations with regard to Confidential Information will not apply to the extent the receiving party can document that information disclosed by a party:

(i) is now, or hereafter becomes, through no act or failure to act on the part of the receiving party, generally known or available to the public other than by breach of this Agreement by the receiving party or its Representatives;

(ii) was acquired by the receiving party before receiving such information from the disclosing party without restriction as to use or disclosure;

(iii) is hereafter rightfully furnished to the receiving party without restriction as to use or disclosure by a third party authorized to make such disclosure;

(iv) is information that was independently developed by the receiving party without reference to the Confidential Information disclosed by the other party; or

(v) is disclosed with the prior written consent of the other party.

In addition, each party shall be entitled to disclose Confidential Information in a proceeding brought to enforce its rights and obligations under this Agreement.

6. In the event the receiving party is required by law, regulation or a valid and effective subpoena or order issued by a court of competent jurisdiction or by a governmental body having proper jurisdiction, to disclose any of the Confidential Information disclosed by the other party, the receiving party will promptly notify the other party in writing of the existence, terms and circumstances surrounding such required disclosure so that the disclosing party may seek a protective order or other appropriate remedy from the proper authority. The receiving party agrees to cooperate with the disclosing party in seeking such order or other remedy. The receiving party further agrees that if it is required to disclose Confidential Information of the other party, it will furnish only that portion of the Confidential Information that is legally required to be furnished and will exercise all reasonable efforts to obtain reliable assurances that confidential treatment will be accorded such Confidential Information.

7. The receiving party will promptly return to the disclosing party, or, if so directed by the disclosing party in writing, destroy all tangible items containing or consisting of the disclosing party's Confidential Information and all copies thereof upon the disclosing party's request. In addition, upon request of a party, the other party shall destroy all Confidential Information of the requesting party, and shall certify such destruction by a duly authorized officer upon the request of the other party.

8. Each party recognizes and agrees that nothing contained in this Agreement will be construed as granting any rights to the receiving party, by license or otherwise, to any of the Confidential Information disclosed by the disclosing party except as specified in this Agreement. Additionally, this Agreement imposes no obligation on either party to purchase, sell, license, transfer or otherwise dispose of any technology, services or products, or to engage in any other business transaction. Nothing in this Agreement shall be deemed to grant to either party a license under the other party's copyrights, patents, trade secrets, trademarks or other intellectual property rights.

9. Nothing in this Agreement, any discussions undertaken, nor any disclosures made pursuant to this Agreement shall be deemed a commitment to disclose any information to the other party or to engage in any business relationship, contract or future dealing with the other party. In addition, nothing in this Agreement shall be deemed to limit either party's right to conduct similar discussions or perform similar activities to those undertaken in accordance with this Agreement, unless such discussions or activities are in violation of the terms hereof.

10. Each party understands and acknowledges that neither party makes any representation or warranty, express or implied, as to the accuracy or completeness of Confidential Information disclosed hereunder. The disclosing party shall have no liability or responsibility for errors or omissions in, or any decisions made by the receiving party in reliance on, any Confidential Information disclosed under this Agreement.

11. Each party acknowledges that (a) all Confidential Information disclosed by the other party is owned solely by the disclosing party (or its contractors or licensors), (b) such Confidential Information is valuable to the disclosing party, and (c) the unauthorized disclosure or use of such Confidential Information might cause irreparable harm and significant injury to the disclosing party, for which monetary damages alone might not be an adequate remedy. Accordingly, each party agrees that in the event of breach or threatened breach of this Agreement, the disclosing party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for such breach or anticipated breach without the necessity of posting a bond. Any such relief shall be in addition to, and not in lieu of any other remedies available to the disclosing party, including but not limited to monetary damages.

12. Except upon mutual written agreement, the existence and terms of this Agreement, the discussions that gave rise

to this Agreement, the fact that there have been, or will be, discussions or negotiations contemplated by this Agreement, and the existence and nature of any business relationship between the parties, shall be treated by each party as the Confidential Information of the other party in accordance with the terms of this Agreement.

13. This Agreement commences on the Effective Date and shall continue for a term of two (2) years. Either party may terminate this Agreement for any reason without cause upon providing thirty (30) days' prior written notice to the other party. The recipient's obligations regarding Confidential Information will survive the expiration or termination of this Agreement for the period set forth in Section 3 of this Agreement.

14. No waiver, modification or amendment of any provisions of this Agreement shall be valid unless made in writing, signed by both parties, and specifying with particularly the nature and extent of such a waiver, modification or amendment. No such waiver, modification or amendment shall be construed to be a general waiver, abandonment, modification or amendment of any of the terms, conditions or provisions of this Agreement, and such waiver shall be strictly limited and restricted to the extent and occasion specified in such signed writing. No changes to the original content of this Agreement are valid unless such changes are approved by authorized personnel in Samsung's Legal Department. This Agreement is the complete and exclusive statement regarding the subject matter of this Agreement and supersedes all prior and contemporaneous agreement, understandings and communications, oral or written, between the parties regarding the subject matter of this Agreement, including without limitation, any and all non-disclosure agreements previously entered into between the parties to this Agreement or any of their respective Affiliates.

15. If either party employs attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees. This Agreement shall be construed in accordance with and all disputes hereunder shall be governed by the laws of the State of New York, without giving effect to any choice of laws principles that would require the application of the laws of a different country or state. Any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby must be instituted exclusively in a court of competent jurisdiction, federal or state, located within the Borough of Manhattan, City of New York, State of New York and in no other jurisdiction. Each party further irrevocably consents to personal jurisdiction and exclusively in, and agrees to service of process issued or authorized by, any such court.

16. Neither party shall assign any of its rights or obligations hereunder, except to an Affiliate or successor in interest, without the prior written consent of the other party, which consent shall not be unreasonably withheld.

17. No failure or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

18. The parties shall adhere to all applicable laws, regulations and rules relating to export of personal information and technical data, and shall not export or re-export any personal information or technical data, any products received from the disclosing party, or the direct product of such personal information or technical data, except in accordance with such applicable laws, regulations and rules.

19. If any provision of this Agreement is found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provision shall be deemed modified to the extent required to permit its enforcement in a manner most closely representing the intention of the parties as expressed herein. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Any signed copy of this Agreement copied or reproduced and transmitted via photocopy, facsimile or other process that accurately transmits the original document shall be considered an original document.

IN WITNESS THEREOF, the parties hereto have executed this Agreement by their duly authorized officers or representatives.

| SAMSUNG ELECTRONICS AMERICA, INC. | KANNUU PTY LTD |
|---|---|
| By: _____ | By: _____ |
| Name: Junguoon Ryu | Name: Todd Viegut |
| Title: Director | Title: CEO/Consultant |