**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KANNUU PTY. LTD.<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-4297-ER |

## <u>PLAINTIFF KANNUUPTY LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND ......................................................................... 4

III. LEGAL STANDARD ................................................................................... 8

  A.  Applicability Of Forum Selection Clauses ......................................... 8

  B.  Granting Preliminary Injunction ....................................................... 8

IV.  ARGUMENT ................................................................................................ 9

  A.  Samsung Is Contractually Barred From Requesting *Inter Partes* Review ..................... 9

  B.  The FSC Applies To Samsung's Validity Challenges And Requires That They Be Brought In New York. ...................................................................... 10

  C.  Enforcement Of The FSC Is Neither Unreasonable Nor Unjust. ................................. 14

  D.  The FSC Survived Expiration Of The NDA. ................................................. 17

  E.  Injunctive Relief Is Appropriate And Necessary. ......................................... 18

    1.  Kannuu is likely to succeed on the merits. ............................................. 18

    2.  Kannuu will suffer irreparable harm absent an injunction. ............................ 19

    3.  The balance of equities tips heavily in Kannuu's favor. ............................... 22

    4.  The requested injunction is in the public interest. ................................... 23

  F.  The Requested Relief Is Framed Narrowly. ................................................ 24

V.   CONCLUSION ............................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Tel. & Tel. Co. v. Milgo Elec. Corp.*, 416 F. Supp. 951 (S.D.N.Y. 1976)............................ 19

*Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013) ........................................... 16, 24

*Babcock & Wilcox Co. v. Control Components, Inc.*, 161 Misc. 2d 636 (N.Y. Sup. Ct. 1993) ... 19

*Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123 (2d Cir. 2001) ...................................... 1, 11

*Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016)........................................................ 12

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)......................................................... 8

*Dodocase VR, Inc. v. MerchSource, LLC*, 17-cv-07088-EDL, 2018 U.S. Dist. LEXIS 48654

    (N.D. Cal. Mar. 23, 2018) ....................................................................................... 15, 17, 24

*Dodocase VR, Inc. v. Merchsource, LLC*, 767 Fed. Appx. 930 (Fed. Cir 2019)........................... 2

*eBay v. MercExchange, LLC*, 547 U.S. 388 (2006)..................................................................... 21

*Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.*, 851 N.Y.S.2d 311 (2008) ................................... 10

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, No. CIV 10-1020 JB/LFG, 2010 U.S. Dist. LEXIS

    137160 (D.N.M. Dec. 7, 2010) ...................................................................................... 19

*General Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011) . 15, 19, 23, 24

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210 (2d Cir. 2014) ............. 9

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104 (2d Cir. 2000) ......................... 22

*HMS Holdings Corp. v. Moiseenko*, 2015 N.Y. Misc. LEXIS 4136 (N.Y. Sup. Ct. Nov. 13, 2015)

    ......................................................................................................................................... 1, 11

*Lear v. Adkins*, 395 U.S. 653 (1969).......................................................................................... 24

*Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133 (Fed. Cir. 2019) ............................................ 14

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ..................................................... 16, 24

*Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014). ...................................................... 15, 16

*Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52 (1995) ........................................ 2, 3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) ............................. 16

*Natt .v White Sands Condominium*, 95 A.D.3d 848 N.Y.S.2d 231 (N.Y.A.D. 2 Dept., 2012)....... 2

*NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012) ................................... 9

*Nomadix, Inc. v. Guest-Tek Interactive Entm't Ltd.*, Case No. 2:19-cv-04980-AB, 2020 U.S.

  Dist. LEXIS 39732 (C.D. Cal. Jan. 23, 2020) ................................................... 14, 24

*NuCurrent Inc. v. Samsung Elecs. Co.*, 19cv798 (DLC), 2019 U.S. Dist. LEXIS 110991

  (S.D.N.Y. July 2, 2019) ............................................................................... 2, 11, 17

*NuCurrent, Inc. v. Samsung Elecs. Co.*, Case No. 6:18-CV-51-JRG-KNM, 2018 U.S. Dist.

  LEXIS 223187 (E.D. Tex. Dec. 26, 2018)......................................................... 12, 17

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007) ............................................... 8, 13, 14

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806 (1945). ... 22

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) .................................................................. 8

*States v. Marine Shale Processors*, 81 F.3d 1329 (5th Cir. 1996)................................................ 22

*Tex. Instruments, Inc. v. Tessera, Inc.*, No. C- 00-2114 CW, slip op. at 6 (N.D. Cal. Mar. 6,

  2001) ................................................................................................................... 19

*Texas Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325 (Fed. Cir. 2000)...................... 14, 20, 23

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1  (1972)........................................................... 16

*Upsher-Smith Labs. v. Pamlab, L.L.C.*, 412 F.3d 1319 (Fed. Cir. 2005) ................................... 11

*Weingrad v. Telepathy, Inc.*, 05 Civ. 2024 (MBM), 2005 U.S. Dist. LEXIS 26952 (S.D.N.Y.

  Nov. 3, 2005) ....................................................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................................ 9

**Statutes**

35 U.S.C. § 282 ......................................................................................... 20

35 U.S.C. § 316 ......................................................................................... 12

**Other Authorities**

28A N.Y. Prac., Contract Law § 27:23 ..................................................... 10

**Rules**

Fed. R. Civ. P. 15(d) .................................................................................. 9

# TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| Kannuu | Plaintiff Kannuu Pty. Ltd. |
| Samsung | Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. |
| The '264 patent | U.S. Patent No. 9,697,264 |
| The '354 patent | U.S. Patent No. 9,436,354 |
| The '393 patent | U.S. Patent No. 8,370,393 |
| The '579 patent | U.S. Patent No. 8,996,579 |
| The '852 patent | U.S. Patent No. 8,676,852 |
| The patents-in-suit | The '264, '354, '393, '579, and '852 patents |
| PTAB or the Board | Patent Trial and Appeal Board |
| IPR | *Inter Partes* Review |
| '354 and '393 IPRs | IPR2020-00737 concerning the '354 patent and IPR2020-00738 concerning the '393 patent. |
| AIA | America Invents Act |
| NDA | April 5, 2012 Mutual Non-Disclosure Agreement between Kannuu and Samsung Electronics America, Inc. |
| FSC | Forum selection clause of the NDA |
| USPTO | United States Patent and Trademark Office |
| SDNY | Southern District of New York |
| EDTX | Eastern District of Texas |

# I.    INTRODUCTION

The Court should enjoin Samsung from pursuing the '354 and '393 IPRs because Samsung is contractually barred from requesting *inter partes* review.  The parties entered into a valid and enforceable NDA with a FSC that requires that Samsung bring any disputes relating to the NDA or transactions contemplated by the NDA in the federal or state courts of New York "and in no other jurisdiction."

The '354 and '393 IPRs directly relate to a would-be patent license negotiated under the NDA and Samsung's refusal to enter into such a license, when it instead apparently decided to copy Kannuu's confidential information disclosed under the NDA.  Samsung breached the NDA by, among other things, incorporating Kannuu's proprietary technology into Samsung's SmartTV and Blu-Ray DVD Players, which Kannuu has accused of patent infringement.  Kannuu's patent infringement claims boil down to a dispute over whether or not Samsung is permitted to sell the accused products without first obtaining a license from Kannuu, which was the very subject of the parties' negotiations under the NDA.  Because the '354 and '393 IPRs relate to the NDA or the transactions contemplated by the NDA, the FSC applies and the parties' disputes should be litigated in a court in New York as Samsung agreed in the NDA.

Samsung evidently disputes Kannuu's interpretation of the FSC, but Samsung faces an uphill battle in arguing for a narrow interpretation.  The NDA states that it shall be construed under New York law,[1] and New York law is clear that it is construed broadly to mean "connected by reason of an established or discoverable relation."[2]  The NDA is Samsung's standard NDA.  Moreover, any ambiguity about the scope of the FSC should be resolved in

---

[1] Dkt. No. 29-6 at ¶15.

[2] *See HMS Holdings Corp. v. Moiseenko*, 2015 N.Y. Misc. LEXIS 4136, at *11-12 (N.Y. Sup. Ct. Nov. 13, 2015) (citing *Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123, 128-29 (2d Cir. 2001)).

Kannuu's favor, as Samsung was the drafter of the NDA. New York law is clear that any ambiguity in a contract is interpreted against the drafter.[3] The Supreme Court has explained that the "reason for this rule is to protect the party who did not choose the language from an unintended or unfair result."[4]

Samsung's decision to wage a new patent battle outside of New York is unfair and enjoinable. In *Dodocase VR, Inc. v. Merchsource, LLC*, 767 Fed. Appx. 930 (Fed. Cir 2019), the Federal Circuit confirmed that an enforceable forum selection clause can prohibit a party from pursuing an IPR, and that a district court may enjoin such a party. Kannuu now asks this Court to hold Samsung to the contractual language that Samsung itself drafted and enjoin Samsung's attempt to invalidate Kannuu's patents in proceedings outside of New York.

An injunction is appropriate under the traditional equitable factors. Regarding the first factor, Kannuu is likely to prevail on its claim that the FSC is valid, enforceable, and was breached by Samsung. Samsung cannot challenge the validity of the FSC, but Samsung has gone on record in the IPR proceedings as saying that the FSC is no longer enforceable because it supposedly did not survive expiration of the NDA. Contrary to Samsung's argument, New York law is clear that a FSC normally survives termination of the agreement in which it is contained. Samsung may point to the contrary result in *NuCurrent Inc. v. Samsung Elecs. Co.*, 19cv798 (DLC), 2019 U.S. Dist. LEXIS 110991 (S.D.N.Y. July 2, 2019), which involved Samsung's same standard NDA, but the court in *NuCurrent* deviated from the default rule because the parties there had previously entered into a separate agreement that provided for the survivability

---

[3] *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (applying New York law and holding that "respondents cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it."); *Natt .v White Sands Condominium*, 95 A.D.3d 848, 943 N.Y.S.2d 231 (N.Y.A.D. 2 Dept., 2012) ("It has long been the rule that ambiguities in a contractual instrument will be resolved *contra proferentem*, against the party who prepared or presented it.").

of a forum selection clause whereas the non-disclosure agreement did not. Only because the prior dealings of the parties reflected an intent to deviate from the default rule did the court in *NuCurrent* not apply the default rule. Here, there are no circumstances justifying departure from the default rule, and thus the FSC continues in full force and effect. Kannuu also will show that Samsung breached this valid enforceable provision of the NDA, as Samsung cannot deny that the parties were discussing whether Samsung needed a license of the very same patent portfolio that Kannuu is asserting in this case.

Regarding the second factor, Kannuu will suffer irreparable harm absent an injunction because it will be forced to defend its patents in a second, unagreed upon forum that applies a lower standard of proof and that limits Kannuu's ability to obtain evidence of Samsung's copying as a defense to Samsung's invalidity claims.

Regarding the third factor, the balance of hardships favors Kannuu. Samsung can still pursue its invalidity claims in this Court and regardless of the outcome of the '354 and '393 IPRs, Samsung still would need to litigate in this Court since the PTAB denied Samsung's petitions on three of the five patents that Kannuu is asserting and because Kannuu also has claims here against Samsung for breach of the NDA. Indeed, Samsung has asserted other alleged invalidity defenses and counterclaims here that it has not raised in the IPRs, including under Sections 101, 112 and 132, and thus the IPRs cannot resolve all of the invalidity issues even as to the two patents for which the PTAB has initiated review. In contrast to the lack of harm to Samsung from an injunction, without an injunction Kannuu would be harmed irreparably and monetarily as described in more detail below.

Finally, regarding the fourth factor, the public interest favors enforcing contractual agreements, including forum selection clauses. The public's interest in holding parties to their

---

[4] *See Mastrobuono*, 514 U.S. at 63.

agreements does not undermine the public policy favoring challenging patents because Samsung can pursue its invalidity challenge in this forum.

Accordingly, under Rule 65 of the Federal Rules of Civil Procedure, Kannuu moves the Court for a preliminary injunction against Samsung, ordering Samsung (1) to request authorization from the PTAB to file motions to dismiss the '354 and '393 IPRs, and (2) if the PTAB grants authorization, to file the motions to dismiss. This relief is the same relief that the Federal Circuit upheld in *Dodocase*.[5] Regardless of the PTAB's decision regarding dismissal, Kannuu also moves the Court for a preliminary injunction against Samsung, ordering Samsung not to participate further in the '354 and '393 IPRs.

## II. FACTUAL BACKGROUND

On April 5, 2012, Kannuu and Samsung Electronics America executed an NDA for the purpose of sharing confidential information to explore a potential license to Kannuu's proprietary and patented K-Nav navigation and search technology, and to protect the confidential information from unauthorized disclosure and use, including by Samsung.[6] Specifically, the NDA precluded the use of "Confidential Information for any purpose except for the Business Purpose" for a period of five years.[7] Samsung Electronics America agreed to resolve any disputes regarding the NDA under "the laws of the State of New York" "exclusively in a court of competent jurisdiction, federal or state, located within the Borough of Manhattan, City of New York, State of New York *and in no other jurisdiction*."[8]

Under the NDA, Kannuu shared with Samsung information about its patent portfolio (which included patent applications that had not yet been issued as patents), gave Samsung

---

[5] *See Dodocase*, 767 Fed. Appx. at 936.
[6] Dkt. No. 29-6.
[7] *Id.* at ¶3.
[8] *Id.* at ¶15 (emphasis added).

detailed, confidential technical information about K-Nav and related Kannuu technologies, answered technical questions from Samsung engineers on how to integrate Kannuu's technology into technology platforms for Samsung's Smart TVs and Blu-Ray players, made presentations, gave demonstrations, and delivered proof-of-concept demonstration platforms to Samsung.[9]  For example, on March 8, 2013, Kannuu delivered a specific proof-of-concept build to Samsung Electronics Korea's headquarters in Seoul, Korea, for Samsung Electronics Korea to run on its 2012 Smart TV platform.[10]

After well over a year of highly detailed technology presentations and information transfers from Kannuu to Samsung in both the United States and South Korea regarding Kannuu's patented technology at issue in this case, Samsung informed Kannuu in an email dated July 1, 2013, that Samsung was no longer interested in integrating Kannuu's patented technology into Samsung's devices.[11]  Samsung told Kannuu that Samsung decided it did not need to license Kannuu's technology.   Unbeknownst to Kannuu at the time, after Samsung terminated discussions based on an alleged lack of need, Samsung in fact continued to access Kannuu's proprietary technology after July 1, 2013.[12]  Although Samsung at every turn has denied Kannuu the opportunity to take discovery on this issue, Kannuu already is aware from its own internal investigation that on July 8, 2013, Samsung remotely accessed Kannuu's proof-of-concept build (on Kannuu's server) over 2,500 times.[13]

Over the course of the next four months, Kannuu attempted numerous times to re-engage Samsung in licensing discussions.[14]   The NDA was still in effect at that time and those

---

[9] Declaration of Lewis E. Hudnell, III ("Hudnell Decl."), Ex. 24 at ¶4.
[10] *Id.* at ¶5.
[11] *Id.* at ¶6.
[12] *Id.* at ¶7.
[13] *Id.* at ¶8.
[14] Dkt. No. 29 at ¶¶59-70.

communications were covered by the NDA. As part of those attempts, Kannuu once again informed Samsung that it held numerous patents in the U.S. that covered various aspects of Kannuu's technology. In particular, on August 27, 2013, Kannuu informed Samsung executives in San Jose during an "IP (patent) Overview" that the '393 patent is a "key patent grant" covering the "up, down, left, right" functionality that was at the heart of the Kannuu-Samsung collaboration and licensing discussions. Additionally, Kannuu provided a description to Samsung executives of four families of patents and pending applications, specifically describing the technology and features the patents and applications covered. On November 14, 2013, Kannuu held its last meeting with Samsung to try to reach agreement as to a patent license. Samsung refused to take a license to the patents.

On May 10, 2019, Kannuu filed a complaint for patent infringement against Samsung in the Southern District of New York.[15] The Complaint alleges that various Samsung Smart TVs and Blu-Ray DVD players incorporate Kannuu's technology claimed in, or that can be used to perform methods claimed in, four Kannuu patents: the '393 patent; the '852 patent; the '354 patent; and the '264 patent.[16] The Complaint also alleges that Samsung deliberately copied each and every claim limitation of at least claim 1 of the '393 patent.[17] The Complaint further alleges that Samsung breached the parties' NDA through its unauthorized access of confidential information disclosed by Kannuu under the NDA because such access was for a purpose outside the scope of the business purpose of the NDA.[18] On October 1, 2019, Kannuu amended its

---

[15] Dkt. No. 1.
[16] *Id.* at ¶34; *see also* Dkt. No. 29 at ¶¶73-74.
[17] Dkt. No. 1 at ¶¶43, 55, 67.
[18] *Id.* at ¶¶165-172.

Compliant to assert that Samsung's accused products also incorporate Kannuu's technology claimed in, or that can be used to perform methods claimed in, Kannuu's '579 patent.[19]

In its Answer to Kannuu's First Amended Complaint, Samsung admitted the existence of the FSC and consented to personal jurisdiction and venue in New York.[20] [It is not surprising that Samsung consented to personal jurisdiction and venue, as the New York courts are Samsung's favored forum as evidenced by the fact that Samsung mandates this forum in Samsung's standard NDA. Despite reaping the benefits of the FSC by forcing Kannuu to file this case in this forum (which is not Kannuu's home forum), Samsung chose to open up a second battleground in Virginia (in the PTAB) when, on March 17, 2020, Samsung filed petitions for *inter partes* review asserting that all claims of the patents-in-suit are invalid.[21] Kannuu filed preliminary responses to each of the petitions asserting, among other things, that the Board should consider the FSC and exercise its discretion to deny institution based on the FSC.[22] On September 22, 2020, the PTAB denied Samsung's petitions as to the '264, '579, and '852 patents on the merits and did not address Kannuu's discretionary denial argument.[23] On September 23, 2020, the PTAB granted Samsung's petitions as to the '354 and '393 patents.[24] The Board acknowledged Kannuu's discretionary denial argument but declined to exercise its discretion to consider the merits of whether the FSC barred Samsung's petitions.[25] On October 7, 2020, Kannuu filed a Request for Rehearing[26], along with a Request for Precedential Panel Review.[27] In those requests Kannuu seeks a ruling that the PTAB in fact does have and should exercise

---

[19] Dkt. No. 29 at ¶¶73-74.
[20] *Id.* at ¶¶12-13.
[21] *See* Hudnell Decl., Exs. 1-5.
[22] *Id.* at Exs. 6-10.
[23] *Id.* at Exs. 11-13.
[24] *Id.* at Exs. 14-15.
[25] *Id.*
[26] *Id.* at Ex. 16.

inherent discretion to consider the private agreement between the parties as to the proper forum. Although these requests remain pending, there is no guarantee that the PTAB will rule in Kannuu's favor. Consequently, Kannuu was forced to seek relief in this Court. As explained further below, each of Samsung's petitions violated the FSC. Accordingly, the Court should enjoin Samsung from challenging the validity of the '354 and '393 patents in a separate forum outside of New York.

## III. LEGAL STANDARD

### A. Applicability Of Forum Selection Clauses

In New York the applicability of a forum selection clause is evaluated under the four-part test identified in *Phillips v. Audio Active, Ltd.*.[28] Under *Phillips*, courts first evaluate: (1) whether the FSC was "reasonably communicated" to the party resisting enforcement; (2) whether the FSC is mandatory or permissive; and (3) whether the claims and parties involved in the suit are subject to the clause.[29] If the first three requirements are met, the forum selection clause is presumptively enforceable, but the fourth step is to ascertain whether that presumption may be rebutted by showing that enforcement would be unreasonable or unjust.[30] Analysis of these factors shows that the FSC is enforceable and should be applied. Also, because the default rule is that forum selection clauses survive the agreement that they are part of, the FSC survived the NDA and has not expired.[31]

### B. Granting Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

---

[27] *Id.* at Ex. 17.

[28] *See Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006).

[29] *Id.* at 383.

[30] *Id.* (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362-63 (2d Cir. 1993)).

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[32] The Court has authority to enjoin Samsung from pursuing related proceedings outside of New York.[33] Kannuu seeks preliminary relief because concurrently with this Motion, Kannuu seeks leave to supplement its First Amended Complaint to assert a claim for breach of the FSC. The breach occurred when Samsung filed its IPR petitions with the PTAB, which occurred after Kannuu filed its First Amended Complaint.[34] Kannuu also seeks preliminary relief because the Court denied Kannuu's request to conduct discovery in connection with this motion.[35] Kannuu submits that it is entitled to a final decision on the breach of FSC claims if its request for leave to supplement is granted and after discovery concludes.

## IV. ARGUMENT

### A. Samsung Is Contractually Barred From Requesting *Inter Partes* Review.

Samsung is contractually barred from requesting *inter partes* review because it agreed to (indeed drafted and insisted on) the FSC. The FSC requires that any disputes that arise out of the NDA or transactions contemplated by the NDA must be brought in New York courts (and those courts alone):

> This Agreement shall be construed in accordance with and all disputes hereunder shall be governed by the laws of the State of New York, without giving effect to any choice of law principles that would require the application of the laws of a

---

[31] *See Weingrad v. Telepathy, Inc.*, 05 Civ. 2024 (MBM), 2005 U.S. Dist. LEXIS 26952, at *9-10 (S.D.N.Y. Nov. 3, 2005).
[32] *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).
[33] *See Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 212 (2d Cir. 2014) (holding that "the FINRA arbitration rules have been superseded by forum selection clauses requiring 'all actions and proceedings' related to the transactions between the parties to be brought in court"); *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 263 (2d Cir. 2012) (a court with personal jurisdiction over a party can enjoin that party from engaging in conduct outside of that court's geographical boundaries).
[34] *See* Fed. R. Civ. P. 15(d); *compare* Dkt. No. 29 with Hudnell Decl., Exs. 1-4.
[35] Hudnell Decl., Ex. 18 at 12:3-5.

different country or state.  Any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby must be instituted exclusively in a court of competent jurisdiction, federal or state, located within the Borough of Manhattan, City of New York, State of New York and in no other jurisdiction.[36]

The FSC is valid and enforceable and applies to the instituted IPRs for several reasons.

The first *Phillips* requirement is satisfied because Samsung was well aware of the FSC. Samsung even drafted it, and acknowledged its existence in its Answer to the First Amended Complaint.[37]  Thus, the FSC has been "reasonably communicated" to Samsung.

The second *Phillips* requirement is satisfied because the FSC is mandatory.  Under applicable New York law a forum selection clause is mandatory "when the parties consent to the *exclusive* jurisdiction of the chosen court."[38]  Here, the NDA is mandatory because it expressly designates New York as the "exclusive" forum for Kannuu's and Samsung's disputes, and expressly excludes "any other jurisdiction."

The third *Phillips* requirement is satisfied because Kannuu and Samsung—the parties to the NDA—are subject to the FSC and, as explained further below, Samsung's claims in the instituted IPRs are subject to the FSC.  Thus, the first three *Phillips* requirements are satisfied and the FSC is presumptively enforceable.  The fourth *Phillips* requirement is addressed below in Section IV.C.

**B.    The FSC Applies To Samsung's Validity Challenges And Requires That They Be Brought In New York.**

---

[36] Dkt. No. 29-6 at ¶15.
[37] Dkt. No. 38 at ¶¶12-13.
[38] *See* 28A N.Y. Prac., Contract Law § 27:23 (emphasis added); *see also Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.*, 851 N.Y.S.2d 311, 313 (2008)) (applying New York law and concluding that clause was mandatory because of "the words 'irrevocably submit' and 'exclusive'").

Under New York law, the phrase "relating to" is construed broadly to mean "connected by reason of an established or discoverable relation."[39] The Second Circuit explained that "[c]ourts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with,' . . . and synonymous with the phrases 'with respect to,' and 'with reference to,' . . . and have held such phrases to be broader in scope than the term 'arising out of.'"[40] Indeed, in *NuCurrent v. Samsung*, another court in this district found that an identical forum selection clause to the Kannuu-Samsung FSC "warrants a broad interpretation" and that "relating to" in the FSC is equivalent to the phrases "in connection with" and "associated with."[41]

In light of the FSC's breadth, Samsung's defenses that the patents-in-suit are allegedly invalid fall squarely within the scope of the FSC. The broad FSC applies to any and all actions, suits, "or *proceedings*" "arising out of *or relating to* this Agreement *or the transactions contemplated hereby*."[42] Just as Kannuu's patent infringement claims relate to the NDA and/or the transactions contemplated by the NDA, so too do Samsung's challenges to the validity of those same patents. Indeed, Samsung filed its IPR petitions in response to this suit and is attempting to use the IPRs to nullify it. Samsung's invalidity claims are directly related to the question of whether Samsung is liable for patent infringement in this case.[43] In *NuCurrent v. Samsung*, Samsung even successfully sought to transfer NuCurrent's infringement and breach of

---

[39] *See HMS Holdings Corp. v. Moiseenko*, 2015 N.Y. Misc. LEXIS 4136, at *11-12 (N.Y. Sup. Ct. Nov. 13, 2015) (citing *Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123, 128-29 (2d Cir. 2001)).

[40] *Coregis*, 241 F.3d at 128-29.

[41] *See NuCurrent Inc. v. Samsung Elecs. Co.*, 19cv798 (DLC), 2019 U.S. Dist. LEXIS 110991, at *8-9 (S.D.N.Y. July 2, 2019) (citing *Coregis,* 241 F.3d at 129).

[42] Dkt. No. 29-6 at ¶15 (emphasis added).

[43] *See Upsher-Smith Labs. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("A century-old axiom of patent law holds that a product 'which would literally infringe if later in time anticipates if earlier.'") (citations omitted).

contract claims, and Samsung's related invalidity claims, from EDTX to SDNY based on a virtually identical forum selection clause.[44]

The IPRs constitute "proceedings" under the NDA. As the USPTO explains, "inter partes review is a trial *proceeding*."[45] Once a petitioner files a petition, the PTAB decides "if the *proceeding* is instituted" or dismissed.[46] As the Supreme Court has explained, "[the IPR statute] creates within the Patent Office a Patent Trial and Appeal Board (Board) . . . that conducts the *proceedings*, reaches a conclusion, and sets forth its reasons."[47] The rules governing the conduct of *inter partes* review include prescribing sanctions "for improper use of the proceeding," conferring the right to an oral hearing "as part of the proceeding," and requiring the USPTO Director to consider the Office's ability to timely complete the "proceedings."[48]

Under the broad meaning of "relating to," it is apparent that the '354 and '393 IPR proceedings relate to the NDA or the transaction contemplated by the NDA. First, the IPRs relate to the NDA because Samsung used confidential information provided by Kannuu under the NDA in Samsung's infringement of the patents-in-suit. Specifically, Samsung's accused products incorporate Kannuu's proprietary K-Nav technology. Samsung's infringement led to the district court action, which led Samsung to assert invalidity affirmative defenses and counterclaims against the patents-in-suit.[49] The allegations of infringement in this case in turn led Samsung to file the IPRs. Thus, the '354 and '393 IPRs are related to the NDA.

The same might not be true if the FSC were narrower in scope, for example if it merely

---

[44] *See NuCurrent, Inc. v. Samsung Elecs. Co.*, Case No. 6:18-CV-51-JRG-KNM, 2018 U.S. Dist. LEXIS 223187 (E.D. Tex. Dec. 26, 2018).

[45] https://www.uspto.gov/patents-application-process/appealing-patent-decisions/trials/inter-partes-review (emphasis added).

[46] *Id.*

[47] *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2137 (2016) (emphasis added).

[48] *See* 35 U.S.C. § 316.

[49] Dkt. No. 38 at Answer ¶247, Counterclaims ¶¶9-140.

provided that only "lawsuits" "arising out of" or "arising under" the Agreement were to be brought in New York. In such circumstances, courts have held that only actions seeking to enforce rights or duties of the contract fall under the forum selection clause.[50] But by providing that any "proceedings" "relating to" the Agreement—or even those which merely relate to "the transactions contemplated hereby"—be in New York, the FSC encompasses much more, including claims of patent invalidity where the transactions contemplated pertained to the patents at issue. Indeed, the Second Circuit in *Phillips* contrasted these two scenarios, finding that it did "not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only '*relate to*,' 'be associated with,' or 'arise in connection with' the contract."[51]

Second, the '354 and '393 IPRs relate to the transactions contemplated by the NDA because the purpose of sharing confidential information was "to further a business relationship between the parties" regarding obtaining rights to Kannuu's patented technology.[52] These contemplated transactions included first and foremost (and indeed exclusively) the parties' desire to allow Samsung to evaluate Kannuu's patented technology to determine if the patents-in-suit merited a license.[53] Samsung supposedly concluded it did not need a license, whereas Kannuu's lawsuit is premised on the notion that Samsung did need a license to use the technology that Kannuu shared under the NDA. This suit against Samsung and the IPRs directly relate to and

---

[50] *See*, *e.g.*, *Phillips*, 494 F.3d at 391.
[51] *Id.* at 389 (emphasis added).
[52] Dkt. No. 29-6.
[53] Hudnell Decl., Ex. 24 at ¶3.

flow from Samsung's refusal to license the patents-in-suit. [54]  Thus, the '354 and '393 IPRs relate to transactions contemplated by the NDA.

Third, the '354 and '393 IPRs relate to the NDA or the transactions contemplated by the NDA because the information that Samsung obtained from Kannuu under the NDA is highly relevant to the secondary consideration of copying. [55]  For example, after Samsung terminated discussions with Kannuu, Samsung continued to access Kannuu's proprietary technology. [56] Specifically, on July 8, 2013, after breaking off discussions, Samsung accessed the proof-of-concept build on Kannuu's server over 2,500 times. [57]  If Samsung disputes that it has improperly accessed and copied the proof-of-concept build that Kannuu had shared with Samsung under the NDA, the dispute about copying comes squarely within the FSC and is inextricably intertwined with Samsung's assertions that the patents-in-suit are obvious. [58]

### C.    Enforcement Of The FSC Is Neither Unreasonable Nor Unjust.

Because the FSC is presumptively enforceable and covers Samsung's invalidity challenges to the '354 and '393 patents, Samsung can only avoid its enforcement by showing that application of the FSC would be unreasonable or unjust. [59]  This showing places a heavy burden on Samsung, which it cannot meet. [60]

Enforcement of the FSC would not be unfair to Samsung at least because requiring that all aspects of this case—both contractual and non-contractual, both statutory and non-statutory— be heard in a New York forum is precisely what Samsung agreed to when it drafted, proposed

---

[54] *See Dodocase*, 767 Fed. Appx. at 934-935 (citing *Texas Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000)); *Nomadix, Inc. v. Guest-Tek Interactive Entm't Ltd.*, Case No. 2:19-cv-04980-AB, 2020 U.S. Dist. LEXIS 39732, at *8 (C.D. Cal. Jan. 23, 2020).
[55] *See Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1137 (Fed. Cir. 2019).
[56] Hudnell Decl., Ex. 24 at ¶8.
[57] *Id.* at ¶9.
[58] *See Liqwd,* 941 F.3d at 1137.
[59] *See Phillips*, 494 F.3d at 392.

and entered into the NDA. Samsung cannot credibly argue that enforcement of the FSC is suddenly unfair, much less fundamentally so.[61]

Nor can it be said that enforcing the FSC to enjoin Samsung from pursuing the '354 and '393 IPRs would contravene public policy. Enforcing the FSC does not limit Samsung's ability to challenge the '354 and '393 patents—it merely limits where Samsung can bring its challenge. Parties not subject to the same contractual obligations as Samsung are free to participate in IPRs at the PTAB. Samsung faces no limitations in bringing a validity challenge in this Court and is actively doing so via its affirmative defenses and counterclaims.[62] Indeed, in *Dodocase VR, Inc. v. Merchsource, LLC*,[63] the Federal Circuit held that the forum selection clause at issue did not undermine the public interest because the patent challenger was free to bring validity challenges in the district court and independent third parties could initiate separate PTAB proceedings.[64]

Pursuing a validity challenge in this Court is actually more expedient and more expansive than pursuing the same challenge at the PTAB. Samsung's invalidity defenses will likely be resolved through summary judgment or at trial before Samsung's PTAB petitions would even be finally decided. Additionally, the PTAB's recent departure from a "broadest reasonable interpretation" claim construction standard in favor of the standard that is applied in the district courts means that Samsung would not be deprived of that procedural advantage that formerly

---

[60] *See Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014).

[61] *See General Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1365 (Fed. Cir. 2011) ("Having contracted for a specific forum, [Samsung] should not be heard to argue that the enforcement of the contract into which [they] freely entered would cause a hardship.").

[62] Dkt. No. 38 at Answer ¶247, Counterclaims ¶¶9-140.

[63] *See Dodocase VR, Inc. v. MerchSource, LLC*, 17-cv-07088-EDL, 2018 U.S. Dist. LEXIS 48654, at *30-31 (N.D. Cal. Mar. 23, 2018) *aff'd and remanded*, No. 2018-1724, 767 Fed. Appx. 930 (Fed. Cir. Apr. 18, 2019) (finding that public policy interest in enforcing a bargained-for presumptively valid forum selection clause prevails over *Lear* concerns).

[64] *See Dodocase*, 767 Fed. Appx. at 935.

accompanied PTAB proceedings.[65]  Further, Samsung can raise and has raised invalidity theories under 35 U.S.C. §§ 101 and 112 and can raise §§ 102 and 103 arguments based on prior art printed publications, systems, or products.  Conversely, at the PTAB, Samsung can raise § 102 and § 103 challenges based only on patents and printed publications.

Even assuming that the public policy in favor of challenging patent validity would conceivably be threatened by enforcing the FSC, which it would not, that policy, like all policies, is not absolute; it must be considered in light of competing policies, including the strong public policy favoring forum selection clauses.[66]  Forum selection clauses constitute an "indispensable element in international trade, commerce, and contracting," and should not give way to forum shopping or litigation tactics.[67]  Samsung's preference for pursuing a validity challenge at the PTAB does not justify disregarding the FSC.

Instead, when Congress created IPRs, it preserved the ability to bring them as parallel proceedings and did not require district courts to stay their cases.  By leaving the question of whether to stay a patent litigation to the district court's sound discretion, Congress implicitly recognized "that both are adequate fora to adjudicate claims of patent invalidity."[68]  The loss of the ability to bring a case in a second forum is not a sufficiently compelling reason to disregard the parties' agreed-upon exclusive forum.

---

[65]    *See*    https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/procedures/ptab-issues- claim-construction.

[66] *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Martinez*, 740 F.3d at 218 ("[T]he presumptive enforceability of forum selection clauses reflects a strong federal public policy of its own."); *see also Dodocase*, 767 Fed. Appx. at 935 ("[W]hether the preliminary injunction is in the public interest, the district court noted the public interest in enforcing contractual rights and obligations.").

[67] *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 (1972); *see also Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013) (finding that when parties have agreed to a valid forum selection clause, a court should give controlling weight to that clause except for in the most exceptional cases)."

Finally, Samsung's failure to contest personal jurisdiction and venue in the district court action, as well as Samsung's decision to assert invalidity defenses and counterclaims in the district court action, show that enforcement of the FSC is reasonable and not unjust.[69] And Samsung also argued to the EDTX that an identical forum selection clause in an NDA between Samsung and NuCurrent was not unreasonable or unjust.[70] Thus, Samsung cannot rebut the presumption that enforcement of the FSC would not be unreasonable or unjust.

### D. The FSC Survived Expiration Of The NDA.

Samsung may try to argue that the FSC did not survive expiration of the NDA, but that argument lacks merit. Samsung previously raised this expiration argument in another SDNY patent litigation, *NuCurrent v. Samsung*, involving a virtually identical forum selection clause and non-disclosure agreement to the ones at issue in this case.[71] The district court's determination that NuCurrent was not likely to prevail on the merits was based on its determination that the forum selection clause had expired in view of the unique underlying facts of that case.[72] The district court acknowledged that normally a forum selection clause would survive termination of an agreement but that it did not in the *NuCurrent* case because the agreement did not retain a provision of a prior agreement between the parties that expressly provided for the survivability of that agreement's forum selection clause.[73] No such prior agreement exists in this case. In the '354 and '393 IPRs, Samsung told the PTAB that the FSC

---

[68] *See Dodocase*, 2018 U.S. Dist. LEXIS 48654, at *32.

[69] Dkt. No. 38 at ¶¶12-15.

[70] *See NuCurrent, Inc. v. Samsung Elecs. Co.*, Case No. 6:18-CV-51-JRG-KNM, 2018 U.S. Dist. LEXIS 223187, at *10 (E.D. Tex. Dec. 26, 2018).

[71] *See Nucurrent Inc. v. Samsung Elecs. Co.*, 19cv798 (DLC), 2019 U.S. Dist. LEXIS 110991 (S.D.N.Y. July 2, 2019).

[72] *Id.* at *9-10.

[73] *Id.* at *10.

here had likewise expired, even though that is plainly untrue.[74] And in an abrupt about-face, Samsung later dropped its argument the FSC has expired in its briefing to the PTAB. Samsung's silence at the PTAB should be construed as a concession that the FSC has not expired.

## E. Injunctive Relief Is Appropriate And Necessary.

As described in detail below, a preliminary injunction is appropriate and necessary because Kannuu has established that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest.

### 1. Kannuu is likely to succeed on the merits.

Samsung breached the FSC by petitioning for *inter partes* review of the patents-in-suit. Because the '354 and '393 IPRs relate to the breach, Kannuu is likely to succeed on the merits of this claim. To the extent Samsung argues that the FSC extends only to Kannuu's affirmative claims of infringement, but not to Samsung's efforts to defeat those claims, that would be incorrect. In *Dodocase*, the Federal Circuit rejected this argument made by a defendant seeking to overturn a district court's order enjoining it from pursuing an IPR.[75] The particular language of the NDA further compels this conclusion. It states that "any legal action, suit or proceeding . . . . must be instituted exclusively in a court . . . located within the Borough of Manhattan . . . and in no other jurisdiction."[76]

The PTAB, however, is located outside of New York, and the oral hearing in the '354 and '393 IPRs is set to occur in San Jose, California, or alternatively in Alexandria, Virginia, or

---

[74] Hudnell Decl. Ex. 19 at 30:22-25.

[75] *See Dodocase*, 767 Fed. Appx. at 935 ("[T]he district court did not err in concluding that the language of the forum selection clause of the MLA, which used similar language, "arising out of or under this Agreement," encompassed PTAB proceedings.").

[76] Dkt. No. 29-6 at ¶15.

Denver, Colorado.[77]  Thus, in filing its IPR petitions, Samsung instituted proceedings that relate to the NDA and the transactions contemplated by the NDA in a jurisdiction forbidden by the parties' agreement.  Thus, this factor weighs heavily in favor of Kannuu.

### 2. Kannuu will suffer irreparable harm absent an injunction.

If an injunction does not issue, Kannuu will suffer irreparable harm because it will be forced to litigate the same issues in multiple fora at the same time.[78]  In *Gen. Protecht*, the Federal Circuit noted that, "[u]nlike arbitration, an ITC proceeding can have a direct and significant impact on a responding party and is not a 'therapeutic' exercise."[79]  Like an ITC proceeding, the PTAB proceedings brought by Samsung after the filing of the complaint in this action will force Kannuu to litigate in two different forums at the same time, with the real potential for inconsistent results.  "The inconvenience and [business] disruption" associated with litigation outside the parties' agreed-upon forum constitutes irreparable harm.[80]

Samsung's attempt to deprive Kannuu of the bargained-for forum, including a jury, also gives rise to irreparable harm as a matter of law.  Indeed, in *Gen. Protecht*, the Federal Circuit affirmed the district court's ruling that a party would be irreparably harmed as a matter of law if

---

[77] Hudnell Decl., Exs. 20-21.

[78] *See Babcock & Wilcox Co. v. Control Components, Inc.*, 161 Misc. 2d 636, 646 (N.Y. Sup. Ct. 1993) (finding irreparable harm where a party would be "forced to engage in duplicative litigation and unnecessary expense"); *cf. Am. Tel. & Tel. Co. v. Milgo Elec. Corp.*, 416 F. Supp. 951, 953 (S.D.N.Y. 1976) ("[T]he simultaneous maintenance of two proceedings is an unnecessary duplication of judicial and agency effort, not to mention expensive and time-consuming for the litigants.").

[79] *See General Protecht Group*, 651 F.3d at 1364.

[80] *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, No. CIV 10-1020 JB/LFG, 2010 U.S. Dist. LEXIS 137160, at *79 (D.N.M. Dec. 7, 2010) (quoting *Tex. Instruments, Inc. v. Tessera, Inc.*, No. C- 00-2114 CW, slip op. at 6 (N.D. Cal. Mar. 6, 2001)), *aff'd* 651 F.3d 1355 (Fed. Cir. 2011).

it were "deprived of its bargained-for forum," expressly rejecting the argument that "deprivation of one's chosen forum . . . is not irreparable harm per se."[81]

Proceeding in the unauthorized forum chosen by Samsung—the PTAB—all but ensures that Kannuu will suffer additional, unquestionably irreparable harm. In addition to being subjected to a second forum, Kannuu's patents will not be entitled to a presumption of validity in the PTAB as they are in this Court.[82] Kannuu's patents also will be evaluated under the preponderance of the evidence standard at the PTAB as opposed to the clear and convincing evidence standard employed by this Court. These and other deviations have resulted in extremely high invalidation rates at the PTAB. So extreme, in fact, that the former Chief Judge for the Federal Circuit labelled the panels of administrative personnel deciding IPR petitions as "patent death squads."[83] Subjecting Kannuu's patents to these death squads, in violation of the parties' express agreement to litigate disputes related to the NDA in New York exclusively, wrongfully puts Kannuu's patents at risk.

As another example, given the centrality of Samsung's copying to the nonobviousness determination, the limited scope and shortened time period for conducting discovery in the IPRs would unduly prejudice Kannuu's ability to have the opportunity to fully and fairly present its copying evidence. This situation is in contrast to the issue being decided in the district court, where Samsung currently is seeking a declaration that the patents are invalid as obvious. When copying by the patent challenger is critical to a nonobviousness determination, the streamlined IPR procedures are not the right fit for getting at the truth and a fair result.

---

[81] *See Gen. Protecht*, 651 F.3d at 1363-64; *see also Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1332 (Fed. Cir. 2000) (finding substantial threat of irreparable injury in similar circumstances).

[82] *See* 35 U.S.C. § 282.

[83] Hudnell Decl. at Exs. 22-23.

Even though Kannuu firmly believes that the PTAB would ultimately uphold the validity of the '354 and '393 patents, if those proceedings are not otherwise terminated as a result of this Motion, Kannuu's business will be irreparably damaged during that yearslong PTAB trial and appeals process. As discussed above, the PTAB declined to address the validity and enforceability of the FSC. Without relief from this Court and with a cloud of uncertainty looming over Kannuu's patents, Kannuu's ability to license its technology on favorable terms, or at all, will be depressed.

In addition to the inherently irreparable harm of litigating on two fronts due to being deprived of an agreed-upon forum, Kannuu will suffer further harm due to increased costs and delay associated with the '354 and '393 IPRs. Samsung filed five IPR petitions—one against each of the five patents-in-suit. Although the PTAB only instituted two of those petitions, the costs just to defend against these two challenges are in the hundreds of thousands of dollars in attorney's fees, expert witness fees, and other costs. The Federal Circuit has found these hardships, including mounting a patent validity defense in a second forum and the attendant financial, and business burdens, to constitute irreparable harm sufficient to enjoin those petitions.[84] The harm to Kannuu cannot be remedied without an injunction.[85]

This factor weighs heavily in Kannuu's favor because Samsung (a) contracted to litigate exclusively in New York, (b) can obtain full and in fact more complete relief in this forum, and (c) filed affirmative defenses and counterclaims in this case seeking the exact same relief that it seeks from the PTAB.[86]

---

[84] *See Dodocase*, 767 Fed. Appx. at 935.

[85] *See eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (Courts should consider whether "remedies available at law, such as monetary damages, are inadequate to compensate for that injury.").

[86] *See* Dkt. 38 at Affirmative Defense No. 2, Counterclaims Counts I-V.

### 3. The balance of equities tips heavily in Kannuu's favor.

The substantial and irreparable harm that Kannuu is suffering and will continue to suffer without immediate injunctive relief far outweighs any potential harm to Samsung. As an initial matter, whether Samsung will suffer any hardship because of an injunction is irrelevant because its breach of the FSC is willful. It is well-established that "he who comes into equity must come with clean hands."[87] After agreeing that the parties' disputes related to the NDA should be heard in New York, then breaching that agreement by filing proceedings in a prohibited forum, Samsung's hands are not clean. Samsung's willful noncompliance with the FSC should foreclose any equitable arguments it makes in opposing this Motion.[88]

Even if the Court were to consider Samsung's equitable arguments, any such arguments would not tip the balance in Samsung's favor. Samsung may argue, for example, that it already has invested time and money in the IPR proceedings. But because the NDA is clear that all proceedings related to that agreement or the transactions contemplated by the NDA must be brought in New York and New York alone, Samsung has only itself to blame if its IPR investments are a bust.

Nor can Samsung identify any legitimate hardships stemming from Kannuu's specific proposed relief. Samsung cannot argue that it is a hardship to be unable to pursue an invalidity challenge at the PTAB. The Federal Circuit has considered the alleged hardship of having to

---

[87] *See Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, (1945).

[88] *See, e.g., Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000) ("[T]he appellees' intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities, as the district court did in this case."); *States v. Marine Shale Processors*, 81 F.3d 1329, 1358 (5th Cir. 1996) ("[A] court need not balance the hardship when a defendant's conduct has been willful."); *United States v. Pozsgai*, 999 F.2d 719, 736 (3d Cir. 1993) ("The undisputed facts demonstrating the Pozsgais' repeated noncompliance with the Act and with the Corps' directives to stop filing foreclose any such equitable argument.").

litigate validity in only the district court and found it unavailing.[89]  As described above, Samsung maintains a full and fair opportunity to challenge the validity of the patents-in-suit in New York, an opportunity which it has already embraced by levying multiple affirmative invalidity defenses and declaratory judgment counterclaims.  Essentially, Samsung is attempting to compel Kannuu to fight invalidity battles on two fronts.[90]  Samsung waived its ability to mount a multiforum validity fight when it drafted, proposed, and agreed to the FSC.

While Samsung can obtain the same relief in this Court as in the PTAB, without an injunction Kannuu would be forced to litigate in two different forums with the potential for inconsistent results and prolonged resolution.  A final written decision in the '354 and '393 IPRs will not issue until September 2021 and any appeal will not conclude until well into 2022 at the earliest—over three years after Kannuu filed this suit.  On the other hand, this Court can provide Samsung equally quick relief based upon the parties' agreed-upon schedule.  Summary judgment briefing will be completed by September 2021—roughly the same time when the PTAB will issue its final written decisions.[91]  Thus, this factor also weighs in favor of Kannuu.

### 4. The requested injunction is in the public interest.

Finally, public policy favors enforcing the FSC.[92]  The Supreme Court has frequently ruled in favor of interpreting forum selection clauses broadly, recognizing that strong public

---

[89] *See Dodocase*, 767 Fed. Appx. at 935; *see also Gen. Protecht*, 651 F.3d at 1365 ("Having contracted for a specific forum, [Samsung] should not be heard to argue that the enforcement of the contract into which [they] freely entered would cause a hardship.").
[90] *See Texas Instruments*, 231 F.3d at 1332.
[91] Dkt. No. 50.
[92] *See Gen. Protecht*, 651 F.3d at 1365.

policy favors forum selection clauses.[93]  "There is no public interest served by excusing a party's violation of its previously negotiated contractual undertaking to litigate in a particular forum."[94]

While the Supreme Court in *Lear, Inc. v. Adkins* recognized public policy rationales underlying the right to challenge a patent, that policy does not outweigh the parties' agreement. Unlike a clause barring all validity challenges, as in *Lear*, the FSC does not preclude Samsung from having a bite at the validity apple.[95]  Instead, enforcing the FSC would merely hold Samsung to its agreement to take that bite in New York and would not undermine *Lear*.  As discussed above, Samsung maintains a suitable forum, this Court, to bring any invalidity challenges it has and Samsung has already done so.  Moreover, the Federal Circuit in *Dodocase* upheld a district court's preliminary injunction of a related IPR despite the *Lear* public policy concern.[96]  The Federal Circuit held that the forum selection clause at issue did not undermine the public interest because the patent challenger was free to bring validity challenges in the district court and independent third parties could initiate separate PTAB proceedings.[97]  . Accordingly, the only policies threatened in this case are the right for parties to freely contract for a selected forum and the ability of the Court to enforce that agreement.  Thus, this factor weighs in favor of Kannuu.

## F.    The Requested Relief Is Framed Narrowly.

Kannuu requests that this Court enter a narrowly tailored preliminary injunction that effectuates the parties' intent without imposing significant burden on Samsung: (1) ordering

---

[93] *See, e.g., Atl. Marine*, 571 U.S. at 63*; Mitsubishi Motors*, 473 U.S. at 626; *Bremen*, 407 U.S. at 10.
[94] *See Gen. Protecht*, 651 F.3d at 1366.
[95]  *See Lear v. Adkins*, 395 U.S. 653, 667 (1969).
[96] *See Dodocase*, 2018 U.S. Dist. LEXIS 48654, at *30-31 (finding that public policy interest in enforcing a bargained-for presumptively valid forum selection clause prevails over *Lear* concerns); *see also Nomadix*, 2020 U.S. Dist. LEXIS 39732, at *10, n.2 (enforcing forum selection clause against IPR).

Samsung to request authorization to file a motion to dismiss Samsung's '354 and '393 IPR petitions, and (2) if the PTAB grants authorization, to file motions to dismiss the petitions. Kannuu is not asking the Court to order the PTAB to take any action—the PTAB may entertain Samsung's motion, or it may not. Kannuu's requested relief mirrors the relief that the Federal Circuit affirmed in *Dodocase*.[98] But regardless of the PTAB's decision regarding dismissal, Kannuu requests that the Court enter an injunction against Samsung, ordering Samsung not to participate further in the '354 and '393 IPRs. By ordering Samsung to take the actions prescribed above, Samsung may still pursue its claims of invalidity of the '354 and '393 patents in this Court.

Accordingly, Kannuu respectfully requests that the Court enter a preliminary injunction ordering Samsung to take the prescribed steps to withdraw its '354 and '393 IPR petitions, not participate in these IPRs, and pursue any litigation regarding the validity of the '354 and '393 patents in this Court.

## V. CONCLUSION

In conclusion, the FSC is valid and enforceable. The '354 and '393 IPRs relate to the NDA and to the patent license transaction contemplated by the NDA. Because all of the factors that the Court considers favor issuing a preliminary injunction, the Court should require Samsung to litigate the patent validity issues in the agreed-upon forum and dismiss its parallel challenge in the PTAB.

---

[97] *See Dodocase*, 767 Fed. Appx. at 935.
[98] *Id.* at 936.

Dated: October 21, 2020

Respectfully submitted,

By:     /s/ Lewis E. Hudnell, III
Perry M. Goldberg (admitted pro hac vice)
goldberg@progressllp.com
Ted Sichelman (admitted pro hac vice)
sichelman@progressllp.com
Lewis E. Hudnell, III (LH 9718)
hudnell@progressllp.com
PROGRESS LLP
11620 Wilshire Blvd., 9th Floor
Los Angeles, California 90025
Tel: (310) 697-7200

**ATTORNEYS FOR PLAINTIFF
KANNUU PTY. LTD.**