UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KANNUU PTY LTD.,

                    Plaintiff,

        – against –

SAMSUNG ELECTRONICS CO., LTD.
and SAMSUNG ELECTRONICS
AMERICA, INC.,

                    Defendants.

**OPINION AND ORDER**

19 Civ. 4297 (ER)

RAMOS, D.J.:

Kannuu Pty, Ltd. ("Kannuu") filed this suit against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") for patent infringement and breach of contract. Samsung subsequently petitioned the Patent Trial and Appeal Board ("PTAB") for *inter partes* review ("IPR") of the patents at issue in the instant suit. Pending before the Court are Kannuu's motions (1) for preliminary injunction, which seeks to enjoin Samsung from pursuing IPR, and (2) for leave to file its supplemental First Amended Complaint, which seeks to add a claim for breach of the forum selection clause in the parties' non-disclosure agreement, and Samsung's motion to stay the instant suit pending resolution of the IPR proceedings. Docs. 54, 61, and 78.

For the reasons set forth below, Kannuu's motion for preliminary injunction and motion for leave to file a supplemental First Amended Complaint are DENIED, and Samsung's motion to stay is GRANTED.

## I.    BACKGROUND

### A. Factual Background

Kannuu is an Australia-based start-up company that developed search-and-navigation technology for various media-related products, including Smart TVs and Blu-ray players. Doc. 29 ¶ 24. Kannuu's technology allowed consumers to use a four-

direction navigation pad on remote controls to search for information or media content on their media devices.  *Id* ¶ 25.  Samsung is an electronics manufacturing company that produces, among other things, Smart TVs and Blu-ray DVD players.  *Id.* ¶¶ 25, 40.  On March 6, 2012, Kannuu received an inquiry from Samsung regarding its search-and-navigation technology, and Kannuu soon after presented an overview of its product to Samsung.  *Id.* ¶¶ 26–28.

On April 5, 2012, Kannuu and Samsung Electronics America, Inc. entered into a non-disclosure agreement (the "Agreement") to further the parties' business relationship and to protect unauthorized disclosure of information deemed confidential by the parties. Doc. 29-6 at 2.  The Agreement provides that

> [e]ach party recognizes and agrees that nothing contained in this Agreement will be construed as granting any rights to the receiving party, by license or otherwise, to any of the Confidential Information disclosed by the disclosing party except as specified in this Agreement. . . .  Nothing in this Agreement shall be deemed to grant to either party a license under the other party's copyrights, patents, trade secrets, trademarks[,] or other intellectual property rights.

*Id.* ¶ 8.

The Agreement's obligations begin on April 5, 2012 and, generally, continue for two years from that date.  *See id.* ¶ 13.  However, the Agreement also states that "obligations regarding Confidential Information will survive the expiration . . . of this Agreement for the period set forth in Section 3 of [the] Agreement."  *Id.*  Under section 3, the parties agree that, for a period of five years from the date of disclosure of confidential information, they "will (i) hold the Confidential Information disclosed by the other party in confidence, (ii) not disclose such Confidential information to any one other than" representatives of the recipient party, "and (iii) not use Confidential information for any purpose except for" furthering the business relationship between the parties.  *Id.* ¶ 3.  The

Agreement also contains a forum selection clause, which requires that any legal action, suit, or proceeding "arising out of or relating to [the] Agreement or the transactions contemplated hereby must be instituted exclusively in a court of competent jurisdiction, federal or state, located within the Borough of Manhattan, City of New York, State of New York and in no other jurisdiction." *Id.* ¶ 15.

After over a year of presentations and information transfers from Kannuu to Samsung regarding Kannuu's technology, Samsung informed Kannuu on July 1, 2013 that it was no longer interested in adopting Kannuu's technology.  Doc. 56-24 ¶ 7. Kannuu unsuccessfully attempted to reengage Samsung in licensing discussions over the next few months.  Doc. 29 ¶¶ 59–60.  According to Kannuu, Samsung continued to access Kannuu's proprietary technology during that time, in violation of the Agreement. Doc. 56-24 ¶¶ 8–9.  As an example, Kannuu alleges that, on July 8, 2013, Samsung impermissibly accessed over 2,500 times the demonstration platforms Kannuu had built for Samsung's evaluation of Kannuu's technology.  *Id.* ¶ 9; *see also* Doc. 29 ¶¶ 58, 241. On November 14, 2013, Kannuu held its last meeting with Samsung to try to reach an agreement regarding a patent license.  Doc. 29 ¶ 70.  Samsung ultimately determined not to adopt Kannuu's technology.

### B. Procedural History

On May 10, 2019, Kannuu filed the instant complaint, asserting that Samsung infringed four of Kannuu's patents:  the '393 patent, '852 patent, '354 patent, and '264 patent.  Doc. 1.  Specifically, Kannuu alleges that various Samsung Smart TVs and Blue-Ray DVD players incorporate Kannuu's technology associated with those patents.  *Id.* Kannuu also brought a claim for breach of the Agreement, alleging that Samsung continued to access Kannuu's propriety technology for a purpose prohibited by the Agreement while it was still in effect.  *Id.*  On October 1, 2019, Kannuu filed its First

Amended Complaint, adding claims that Samsung infringed the '579 patent.  Doc. 29.

On October 15, 2019, Samsung filed its answer to Kannuu's First Amended Complaint,

consenting to personal jurisdiction and venue in this Court.  Doc. 35.

On March 17, 2020, Samsung petitioned the PTAB for IPR of all claims of the

five patents at issue in the instant suit, arguing that the patents are invalid as obvious and

not novel.  Docs. 56-1, 56-2, 56-3, 56-4, and 56-5.  On September 22, 2020, the PTAB

denied institution of review for the '264, '852, and '579 patents.  Docs. 56-11, 56-12, and

56-13.  On September 23, 2020, the PTAB granted review of the '354 and '393 patents.

Docs. 56-14 and 56-15.  On October 7, 2020, Kannuu filed a request for rehearing, along

with a request for precedential panel review, seeking a ruling that the PTAB can and

should use its discretion to consider whether the Agreement's forum selection clause bars

the PTAB from reviewing the patents at issue; those requests remain pending.  *See* Docs.

56-17 and 56-18.

Following a pre-motion conference, Kannuu filed the instant motion for

preliminary injunction on October 21, 2020.  Doc. 54.  On October 23, 2020, Samsung

filed the instant motion to stay litigation pending resolution of the IPR proceedings.  Doc.

61.  And on November 20, 2020, Kannuu filed the instant motion for leave to supplement

the First Amended Complaint by adding a claim for breach of the Agreement's forum

selection clause.  Doc. 78.

## II.   DISCUSSION

### A. Motion for Preliminary Injunction

*1. Legal Standard*

"[A] preliminary injunction is an extraordinary and drastic remedy, one that

should not be granted unless the movant, by a *clear showing*, carries the burden of

4

persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2948 (2d ed. 1995)).  A party seeking a preliminary injunction must show

> (1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quotation omitted).

> *2. Analysis*

> <u>i. Likelihood of Success on the Merits</u>

A district court may grant a preliminary injunction restraining a party from prosecuting a petition before the PTAB where the parties have a valid and enforceable forum selection clause that forecloses that forum.  *Dodocase VR, Inc. v. MerchSource LLC*, 767 F. App'x 930, 934–36 (Fed. Cir. 2019).  To determine whether a forum selection clause is valid and enforceable, a court must determine:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any [] dispute to the designated forum or simply *permitted* to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.

*NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 343 (S.D.N.Y. 2020) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)).  Where a court must "determine whether a particular forum selection clause is mandatory or permissive . . . or whether its scope encompasses the claims or parties involved in a certain suit," it must "apply the law

contractually selected by the parties." *Martinez*, 740 F.3d at 218 (citation omitted). "If the forum clause was communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* at 217 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).

It is undisputed that the forum selection clause was reasonably communicated to Kannuu and that it is mandatory; instead, Samsung argues that the third prong is not satisfied. Regarding that prong, the Agreement specifies that it shall be governed by New York law. Doc. 29-6 ¶ 15. Under New York law, "a fundamental objective of contract interpretation is to give effect to the expressed intention of the parties." *In re MPM Silicones, L.L.C.*, 874 F.3d 787, 795 (2d Cir. 2017). New York courts thus must construe a contract "in accordance with the parties' intent, which is generally discerned from the four corners of the document itself." *Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (quoting *MHR Cap. Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009)). As such, "a written agreement that is complete, clear[,] and unambiguous on its face must be [construed] according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). When a court interprets a contract, "[w]ords and phrases are to be given their plain and ordinary meaning, and New York courts will commonly refer to dictionary definitions in order to determine that meaning." *BOKF, N.A. v. Caesars Entm't Corp.*, 162 F. Supp. 3d 243, 246 n.5 (S.D.N.Y. 2016) (quoting *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 390 (S.D.N.Y. 2014)); *see also Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 81 (N.Y. 2015) (relying on dictionary to determine "common definition" of terms in a rider).

The Agreement's forum selection clause provides that "[a]ny legal action, suit[,] or proceeding arising out of or relating to [the] Agreement or the transactions contemplated hereby must be instituted exclusively in a court of competent jurisdiction, federal or state, located within the Borough of Manhattan, City of New York, State of

New York and in no other jurisdiction." Doc. 29-6 ¶ 15. Regardless of whether the IPR proceedings "aris[e] out of" the Agreement or any transactions contemplated thereby, *see* Doc. 55 at 18–19, Kannuu argues that they constitute proceedings that "relat[e] to [the] Agreement or the transactions contemplated" under the Agreement, *see* Doc. 29-6 ¶ 15, thereby falling within the scope of the forum selection clause.

Because the Agreement does not define the words "relating to," *see id.*, the Court must construe those words according to their plain and ordinary meaning, *see Universal Am. Corp.*, 37 N.E.3d at 81; *see also BOKF, N.A.*, 162 F. Supp. 3d at 246 n.5. The term "related" is defined as "connected by reason of an established or discoverable relation." *Related*, Merriam-Webster, https://www.merriam-webster.com/dictionary/related (last visited Jan. 19, 2021); *see also Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001)*.* Courts have also "described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with' . . . and synonymous with the phrases 'with respect to[]' and 'with reference to.'" *Coregis Ins. Co.*, 241 F.3d at 128–29 (citations omitted); *see also Prod. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d 401, 414 (S.D.N.Y. 2012). Further, while "[t]he phrase 'arising out of' is usually interpreted as indicat[ing] a causal connection," "[t]he term 'relating to' is typically defined more broadly and is not necessarily tied to the concept of a causal connection." *Coregis Ins. Co.*, 241 F.3d at 128 (quotation omitted); *see also Phillips*, 494 F.3d at 389.

Kannuu argues that the IPR proceedings "relate to" the Agreement or transactions contemplated by the Agreement for three reasons. First, Kannuu asserts that Samsung used confidential information—provided by Kannuu pursuant to the Agreement—in its alleged infringement of the disputed patents. Kannuu argues that, because the alleged infringement resulted in the instant suit that in turn resulted in Samsung filing its petitions before the PTAB, the IPR proceedings relate to the Agreement. Second, Kannuu contends that the IPR proceedings relate to transactions contemplated under the Agreement, noting that the parties sought to allow Samsung to evaluate Kannuu's

patented technology to determine if the patents at issue merited a license.  Third, Kannuu argues that the information Samsung obtained from Kannuu pursuant to the Agreement is relevant to considerations potentially at issue in the IPR proceedings.  More specifically, Kannuu notes that considerations of non-obviousness of a patent—such as copying of other designs —must be considered in that review.  *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016).  Thus, Kannuu contends, the IPR proceedings relate to the instant suit's allegations that Samsung copied Kannuu's confidential information.

The Court is unconvinced that the IPR proceedings fall within the scope of the forum selection clause.  As an initial matter, those proceedings do not relate to the Agreement itself, as they do not implicate any of the obligations under the Agreement.  Indeed, the Agreement notes that nothing in it "shall be deemed to grant to either party a license under the other party's . . . patents . . . or other intellectual property rights," and it states that the Agreement does not reflect a commitment to engage in a business relationship.  Doc. 29-6 ¶¶ 8–9.  Thus, although the parties entered the Agreement so that Samsung could evaluate Kannuu's technology, the parties never entered into a licensing agreement that dealt with intellectual property rights.  Further, the outcome of the IPR proceedings will not alter the outcome of Kannuu's claim for breach of the Agreement, as the validity of the patents at issue in no way affects whether Samsung impermissibly accessed or used information deemed confidential under the Agreement.  *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011); *Prod. Res. Grp., L.L.C.*, 907 F. Supp. 2d at 414–15.  Indeed, Kannuu acknowledges as much in its opposition to Samsung's motion to stay, noting that resolution of the IPR proceedings will have "no impact on the breach of contract issues to be decided by the Court."  Doc. 72 at 10.  Because the Agreement implicates confidentiality and not the intellectual property rights of the parties, it is not directly "connected with" or "associated" with the IPR proceedings.

Nor do the IPR proceedings relate to transactions contemplated under the Agreement.  Kannuu's asserted chain between Samsung's alleged use of confidential information and the resulting IPR proceedings is too attenuated to fall within the plain and ordinary meaning of "relating to."  And although some information that arose from discussions pursuant to the Agreement may be relevant in the IPR proceedings, that does not mean that the proceedings themselves are conceptually linked with transactions under the Agreement.  Again, at bottom, the IPR proceedings concern the validity of patents, not confidentiality.

Accordingly, the Court concludes that the IPR proceedings do not "relat[e] to" the Agreement or transactions contemplated under it,[1] and thus do not fall within the scope of the forum selection clause.[2]  As such, Kannuu cannot enforce the forum selection clause here.[3]

ii. Irreparable Harm

Kannuu argues that it will suffer irreparable harm because, absent an injunction, it will be forced to litigate the same issues—namely, the validity of the '354 and '393 patents—in multiple fora at the same time.  Most significantly, Kannuu emphasizes that it

---

[1] Because the term "arising out of" has a narrower meaning than does "relating to," the Court likewise concludes that the IPR proceedings do not arise out of the Agreement or the transactions contemplated under it.  *See Phillips*, 494 F.3d at 389; *Coregis Ins. Co.*, 241 F.3d at 128–29.

[2] Both parties rely extensively on a recent case in this District, *NuCurrent Inc. v. Samsung Electronics Co., Ltd.*, No. 19 Civ. 798 (DLC), 2019 WL 2776950 (S.D.N.Y. July 2, 2019).  Although the non-disclosure agreement in that case contained a forum selection clause identical to the one at issue here, the contractual framework differed from the one in the instant suit, thereby rendering that court's analysis inapposite.  *See id.* at *1, 4 (noting that the court interpreted the scope of the forum selection clause based on the terms of a separate, related contract not present here).  Further, as the district court in *NuCurrent* noted, it did not determine whether the IPR petitions could have been filed before the expiration of the non-disclosure agreement—an issue that neither party here contests.  *Id.* at *2 n.3.  In any event, under New York law, a court's analysis of the language of a contract must be guided primarily by the plain language of the document before it—just as the Court's analysis is here.  *See Luitpold Pharms., Inc.*, 784 F.3d at 87.

[3] Because the Court concludes that the forum selection clause is not enforceable on these facts, it need not and does not determine whether enforcing the clause would be unjust or unreasonable.  *See Martinez*, 740 F.3d at 217.

will lose its bargained-for right under the forum selection clause if it is forced to proceed before the PTAB.  That loss is all the more critical given differences governing the procedural rules in the PTAB and this Court.[4]  Additionally, Kannuu notes that the PTAB and the Court may reach inconsistent results regarding the validity of the patents at issue. Regardless of the outcome of each proceeding, according to Kannuu, the parties will experience inconvenience and disruption by having to expend resources in two different fora.

As noted above, the plain language of the Agreement indicates that the IPR proceedings are not subject to the forum selection clause, so Kannuu is not at risk of losing any bargained-for right under that agreement.  Further, the America Invents Act— which establishes the PTAB—provides that an IPR proceeding may be instituted if the petition requesting the proceeding is filed within one year of "the date on which the petitioner . . . is served with a complaint alleging infringement of the patent."  35 U.S.C. § 315(b).  As such, the Act "expressly contemplates that IPR proceedings may run concurrently with patent infringement actions in federal court," and Samsung is authorized by statute to pursue concurrently this alternative forum.  *NuCurrent Inc. v. Samsung Elecs. Co., Ltd.*, 19 Civ. 798 (DLC), 2019 WL 2776950, at *5 (citing 35 U.S.C. § 315(b)).  While Kannuu may be concerned about inconsistent rulings or duplicative proceedings, those factors alone do not rise to the level of irreparable harm, especially in light of the fact that the parties can—and Samsung has—asked for a stay in this proceeding.  Thus, Kannuu has failed to show that it will suffer irreparable harm absent a preliminary injunction.

### iii. Balance of the Hardships

---

[4] Kannuu notes the lack of a presumption of validity, a lower evidentiary standard, and the more limited scope of discovery in the IPR proceedings as some examples of such procedural rules.

Regarding the balance of hardships, Kannuu again emphasizes that it is suffering a substantial and irreparable harm because of Samsung's alleged breach of the forum selection clause.  But as noted, the IPR proceedings do not fall within the scope of the forum selection clause and thus are not barred by the Agreement.  As such, Kannuu suffers from no hardship beyond simply litigating the patent validity in two fora—a situation that can be remedied by requesting a stay in one of the proceedings, as here.  By contrast, the issuance of a preliminary injunction would likely bar Samsung from pursuing relief before the PTAB at all, foreclosing a proceeding that Congress explicitly permitted.  *See* 35 U.S.C. § 315(b).  Accordingly, Kannuu has failed to show that the balance of the hardships tilts in its favor.

iv. Public Interest

Kannuu has also failed to show that a preliminary injunction would disserve the public interest.  Kannuu notes that the U.S. Supreme Court has recognized that public policy favors enforcing forum selection clauses.  *See, e.g.*, *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63–64 (2013).  Certainly, the Supreme Court has made "clear that courts should weigh the federal policy embodied in the law of intellectual property against even explicit contractual provisions and render unenforceable those provisions that would undermine the public interest."  *Idaho Potato Comm'n v. M & M Produce Farm & Sales*, 335 F.3d 130, 137 (2d Cir. 2003) (citing *Lear, Inc. v. Adkins*, 395 U.S. 653, 673 (1969)); *see also Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 168 (2d Cir. 2012).  But while the Court must carefully balance the public interest of a valid and enforceable forum selection clause against the public interest in discovering invalid patents, *see Rates Tech. Inc.*, 685 F.3d at 168, that balancing of interests is irrelevant where a forum selection clause does not apply to a given case.  Because the instant forum selection clause is inapplicable, the public interest favors allowing Samsung to litigate the validity of the patents at issue before the PTAB.

Based on all four factors, Kannuu has failed to show that a preliminary injunction should be issued.

## B. Motion for Leave to File Supplemental First Amended Complaint

### 1. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave.  Fed. R. Civ. P. 15.  Rule 15(d) states that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  *Id.*  Further, it provides that "[t]he court may permit supplementation even though the original pleading is defective in stating a claim or defense."  *Id.*  Notably, "Rule 15(d) 'reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties.'"  *Altowaiti v. Cissna*, No. 18 Civ. 508 (ER), 2020 WL 2036703, at *3 (S.D.N.Y. Apr. 28, 2020) (quoting *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008)).

"Where the plaintiff seeks to add related claims against the same defendants, the analysis used to determine whether supplementation is appropriate under Rule 15(d) is identical to the analysis used to determine whether amendment is appropriate pursuant to Rule 15(a)."  *Kleeberg v. Eber*, 331 F.R.D. 302, 315 (S.D.N.Y. 2019).  Under Rule 15(a), "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile."  *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).

### 2. Analysis

A Rule 15(d) motion "may be denied based on futility when it is 'beyond doubt that the plaintiff can prove no set of facts in support of [its supplemental] claims.'"  *See Bodum Holding AG v. Starbucks Corp.*, No. 19 Civ. 4280 (ER), 2020 WL 6135714, at *4 (S.D.N.Y. Oct. 16, 2020) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir.

1999)).  The non-moving party bears the burden of establishing the proposed supplemental pleading's futility.  *See Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 377 (S.D.N.Y. 2020).  To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Agerbrink*, 155 F. Supp. 3d at 456.

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

 The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375, 368 (2d Cir. 1995)).  Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it."  *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (quotations omitted).  Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's

favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  Accordingly, when considering a

motion to amend or supplement a pleading, a "court must accept as true all well-pleaded

facts and draw all reasonable inferences in the moving party's favor."  *See Agerbrink*, 155

F. Supp. 3d at 456.

Pursuant to Rule 15(d), Kannuu seeks to supplement its First Amended Complaint

by adding a claim for breach of the Agreement's forum selection clause.  *See* Doc. 79-2.

In its motion, Kannuu reasserts the same arguments it made regarding the applicability of

the forum selection clause in its motion for preliminary injunction, simply incorporating

those arguments by reference and recycling its counterarguments against Samsung.  But

as noted above, the IPR proceedings do not arise out of or relate to the Agreement or the

transactions contemplated under it.  As such, the forum selection clause does not bar

Samsung from prosecuting its IPR petitions, and Samsung did not violate the Agreement

by filing those petitions.

Thus, the Court concludes that Kannuu's proposed supplemental First Amended

Complaint fails to state a claim for breach of the Agreement's forum selection clause.

Accordingly, the Court does not address the remaining factors under Rule 15(d), and

denies Kannuu's motion.  *See Bodum Holding AG*, 2020 WL 6135714, at *7.

**C. Motion to Stay**

*1. Legal Standard*

"District courts have the inherent power to manage their dockets, which includes

issuing a stay pending the conclusion of review proceedings before the [PTAB]."  *Rovi

Guides, Inc. v. Comcast Corp.*, No. 16 Civ. 9278 (JPO), 2017 WL 4876305, at *3

(S.D.N.Y. Oct. 27, 2017) (quoting *Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*,

No. 16 Civ. 4236 (AJN), 2016 WL 6094114, at *2 (S.D.N.Y. Oct. 18, 2016).  "Courts in

this District consider three factors in determining whether a stay pending resolution of

IPR proceedings is appropriate:  (1) whether a stay will simplify the issues in question

and trial of the case; (2) the stage of the proceedings; and (3) whether a stay will

prejudice the nonmoving party." *Id.* (quoting *Straight Path*, 2016 WL 6094114, at *2). However, these factors are not exclusive, and the Court must ultimately consider the totality of the circumstances. *See id.* "The party seeking the stay bears the burden of demonstrating that such relief is warranted." *Straight Path*, 2016 WL 6094114, at *2.

    *2. Analysis*

    <u>i. Simplification of Issues</u>

    First, the Court must determine whether a stay will simplify the issues in question in the case. Samsung has challenged all claims of the '354 and '393 patents, and the PTAB has determined that there is a reasonable likelihood that Samsung will prevail with respect to at least one of the claims challenged in each petition. *See* Docs. 56-14 and 56-15. As such, the PTAB has instituted review on only two of the five patents at issue. Further, the PTAB instituted review on only fourteen of the thirty-seven patent claims identified in the First Amended Complaint.

    Samsung argues that, at a minimum, a stay here will simplify the issues regarding the '354 and '393 patents. Further, Samsung contends that any future claim construction, infringement, or invalidity rulings by this Court may be guided by the procedural history of and the relevant evidence produced in the IPR proceedings. Samsung also asserts that the '354 and '393 patents are closely related to the three non-instituted patents at issue in this suit and, given the subject matter overlap, any outcome from the IPR proceedings will simplify the issues regarding those latter three patents. By contrast, Kannuu asserts that courts regularly deny stays where the PTAB will review fewer than half of the patents and claims at issue. Kannuu also argues that a stay will not simplify the claim construction issues regarding the '354 and '393 patents, noting that the PTAB will likely not consider any further claim constructions beyond those already addressed in its decision to institute review of those patents, and any argument that the IPR proceedings will inform the infringement or invalidity rulings is either speculative or contradicted by the decisions already issued by the PTAB. Finally, Kannuu argues that the IPR

proceedings will not simplify issues regarding the three non-instituted patents, as the subject matter of all five patents does not overlap significantly.

Certainly, this factor favors a stay when all claims at issue are subject to IPR proceedings. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013); *see also Goodman v. Samsung Elecs. Am., Inc.*, 17 Civ. 5539 (JGK), 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017).  After all, "[w]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Goodman*, 2017 WL 5636286, at *2 (quoting *Fresenius USA, Inc.*, 721 F.3d at 1340).  But courts in this District and in other circuits have also concluded that this factor may favor a stay where, as here, the IPR proceedings do not resolve all of the asserted patents or claims in a case.  *See Rovi Guides, Inc.*, 2017 WL 4876305, at *3 (granting stay where four of five asserted patents were subject to IPR proceedings and those proceedings could render moot thirty-seven of the fifty-one claims); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18 Civ. 452 (WCB), 2019 WL 3943058, at *8–9 (D. Del. Aug. 21, 2019) (collecting cases and concluding that the factor favored a stay where only one of three patents and five of twenty claims at issue in the suit were subject to IPR proceedings); *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 358 (D. Mass. 2015) (concluding that factor slightly favored stay where two of eleven patents and three of twenty-two claims were under review in the IPR proceedings); *Serv. Sols. U.S., L.L.C. v. Autel.US Inc.,* No. 13 Civ. 10534 (TGB), 2015 WL 401009, at *3 (E.D. Mich. Jan. 28, 2015) ("[T]he Court is not convinced that a stay is inappropriate merely because only one patent is under review.  Though a stay would have greater potential to simplify the issues if all seven patents were involved in the IPR proceeding, this does not mean that a more limited review would not help simplify the case."); *see also Finjan, Inc. v. FireEye, Inc.*, 13 Civ. 3133 (SBA), 2014 WL 2465267, at *4 (N.D. Cal. June 2, 2014) (granting stay where three of seven patents-in-suit subject to reexamination).  "As those cases make clear, even when IPRs are instituted on fewer than

all the asserted claims, the policies favoring simplification and the reduction of litigation burdens on the parties and the court are often applicable, particularly when the claims that are before the PTAB in an IPR are similar to those that are not."[5]  *IOENGINE, LLC*, 2019 WL 3943058, at *9.

Although not all patents in the instant suit have been instituted for IPR, the Court concludes that a stay would simplify the issues sufficiently to satisfy this factor. Regarding the '354 and '393 patents specifically, if the PTAB cancels Kannuu's claims under review in the IPR proceedings, it will render moot Kannuu's claims as to those patents here, reducing the number of issues in the instant case.  *Goodman*, 2017 WL 5636286, at *2.  If the PTAB cancels some, but not all, of the claims under review, it would at least narrow the issues before the Court regarding those claims.  *See Rovi Guides, Inc.*, 2017 WL 4876305, at *3.  And even if the PTAB upholds all of the patent claims, Samsung "will be estopped from challenging the validity of the claims on any ground that was 'raised or reasonably could have [been] raised' during the IPR proceedings," *id.* (quoting 35 U.S.C. § 315(e)(2)), and the Court "will benefit from the PTAB's guidance on the construction of certain claim terms" and validity, and its expertise "in this complex field of art is likely to be of considerable assistance to the Court," *IOENGINE, LLC*, 2019 WL 3943058, at *10.  Thus, at minimum, a stay would simplify issues relating to the '354 and '393 patents.

---

[5] Kannuu points to a few cases where courts have denied a stay in which all claims cannot be resolved by the IPR proceedings.  *See, e.g.*, *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15 Civ. 7025 (RBK) (JS), 2016 WL 7165695, at *7–8 (D.N.J. Dec. 7, 2016).  However, in those cases, there was no significant overlap between instituted and non-instituted claims, or the balance of all of the stay factors weighed against issuing a stay.  In any event, "[t]he decision whether to grant a stay is committed to the district court's sound discretion, and the court is given considerable leeway in the exercise of its judgment."  *Straight Path*, 2016 WL 6094114, at *3 (quotation omitted).  Thus, even if a court denies a stay where IPR proceedings are instituted on fewer than all asserted claims, that does not necessarily mean that another court abuses its discretion when issuing a stay in similar circumstances.

Further, as Samsung notes, both the instituted and the non-instituted patents in the instant suit are closely related.  Four of the five patents—the two instituted patents and the '579 and '852 patents—are continuations from the same parent application, and all share the same inventor, title, and specification.  *See Finjan, Inc.*, 2014 WL 2465267, at *4 (noting sufficient overlap where patents-in-suit "share a common ancestry," "[p]laintiff accuses the same products of infringing all of the patents-in-suit," and "one of the named inventors overlaps between the reexamination patents and the non-reexamination patents"); *see also IOENGINE, LLC,* 2019 WL 3943058, at *9.   While the '264 patent is a part of a different patent family, *see* Doc 29-4, the terminology used and methodology described in claim 1 of all five patents overlap substantially, and many of the remaining claims within each patent reference and rely heavily upon the mechanism described in that claim.  *See* Docs. 29-1 at 17–18 (the '393 patent), 29-2 at 17–18 (the '852 patent), 29-3 at 17 (the '354 patent), 29-4 at 67–68 (the '264 patent), and 29-5 at 17–18 (the '579 patent); *see also* Doc. 63-2.  Although Kannuu is correct that the claims and limitations vary across the five patents, "the issue simplification factor does not require complete overlap" between the patents.  *IOENGINE, LLC*, 2019 WL 3943058, at *10 (quotation omitted); *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15 Civ. 7025 (RBK) (JS), 2016 WL 7165695, at *7 (D.N.J. Dec. 7, 2016).  Based on the "significant overlap" between the patents here, the PTAB's decision could sufficiently narrow the issues before the Court and guide its analysis regarding the remaining issues in this suit.  *See ACQIS, LLC*, 109 F. Supp. 3d at 357–58.

Kannuu also argues that, even if a stay would simplify the patent issues in the instant suit, it would not simplify the breach of contract claim; thus, Kannuu contends, a stay is not warranted.  But even if Kannuu is correct that nothing in the IPR proceedings will affect its breach of contract claim, a stay should still be issued.  As Samsung notes, Kannuu's patent claims are the main thrust of this litigation, representing fifteen of the sixteen causes of action Kannuu asserts in its First Amended Complaint.  *See* Doc. 29.

Thus, regardless of whether a stay would simplify the breach of contract claim, it would simplify the vast majority of the issues in this case, thereby favoring a stay. *See Rovi Guides, Inc.*, 2017 WL 4876305, at *3.

Of course, "this factor does not favor a stay as strongly as in a case where all of the claims in the litigation are under review in" IPR proceedings, and the IPR proceedings here are unlikely to eliminate the need for a trial. *See ACQIS, LLC*, 109 F. Supp. 3d at 358. Still, given the overlap outlined above, the Court concludes that the first factor slightly favors granting a stay.[6] *See id.*

### ii. Stage of Litigation

Second, the stage of the litigation also weighs in favor of granting a stay. A case that is at the early stage of its lifespan generally favors granting a stay. *See CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13 Civ. 5669 (NSR), 2014 WL 2854656, at *4 (S.D.N.Y. June 20, 2014). "Although 'the range of what qualifies as early stage is relative, there is a general consensus that where the parties have fully briefed the issue of claim construction, attended a *Markman* hearing, and received a claim construction order, [and] discovery is well underway,' this second factor 'counsel[s] against granting a stay.'" *Rovi Guides, Inc.*, 2017 WL 4876305, at *3 (quoting *Adaptix, Inc. v. HTC Corp.*, No. 14 Civ. 2359 (PSG), 2015 WL 12839246, at *2 (N.D. Cal. Aug. 5, 2015)) (concluding factor disfavored stay where fact discovery was closed, the court issued a *Markman* order, and parties were in midst of taking expert depositions). By contrast, courts in this Circuit have concluded that a suit is at an early enough stage to favor a stay where there has been limited to no discovery, and "neither a claim construction hearing nor a trial has been scheduled." *See Straight Path*, 2016 WL

---

[6] The Court notes that Samsung has filed rehearing requests as to two of the non-instituted patents—the '852 and '579 patents. Doc. 62 at 10. Were the PTAB to institute review as a result of those requests, the case for a stay would be stronger under this factor.

6094114, at *3; *see also PopSockets LLC v. Quest USA Corp.*, No. 17 Civ. 3653 (FB) (CLP), 2018 WL 5020172, at *3–4 (E.D.N.Y. Sep. 12, 2018) (noting that there had been limited discovery, and no claim construction proceedings and no trial date had been set). While some courts have noted the time that has passed since a case was brought, the thrust of a court's analysis regarding this factor is the procedural progression of the suit. *See Goodman*, 2017 WL 5636286, at *2.

Here, Kannuu argues that a stay is not warranted because the case has been pending for over a year and a half. *See* Doc. 1. However, as noted, this factor's analysis focuses not on the time that has passed since the suit was commenced but rather on its procedural progress. Regarding that inquiry, Kannuu asserts that fact discovery is well underway, noting that Samsung has already produced at least 35,000 pages of documents. But according to the parties' amended scheduling order, fact discovery will not close until mid-May 2021 at the earliest, and the parties have yet to engage in expert discovery. *See* Doc. 50. Further, the parties are at an extremely early stage regarding the disclosures required under the Local Patent Rules, as the parties still dispute whether Kannuu has sufficiently asserted infringement contentions pursuant to Local Patent Rule 6. Docs. 81, 83, and 91. As a result, "neither a claim construction hearing nor a trial has been scheduled." *Straight Path*, 2016 WL 6094114, at *3. Thus, the case is at an early stage of litigation, and this factor heavily favors granting a stay.

### iii. Prejudice or Disadvantage

Third, the Court must determine whether Kannuu will suffer undue prejudice or tactical disadvantage as a result of a stay. For courts in this District, "[t]he question of undue prejudice or clear tactical disadvantage is informed by four sub-factors, including (1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Rovi Guides, Inc.*, 2017 WL 4876305, at *4 (quotation omitted). Notably, "it is well established that 'mere delay in the litigation does not establish undue prejudice' for purposes of a motion to stay."

*Goodman*, 2017 WL 5636286, at *3 (quoting *Rovi Guides, Inc.*, 2017 WL 4876305, at *4).

As to the first sub-factor, Samsung filed all five of its IPR petitions on March 17, 2020, Docs. 56-1, 56-2, 56-3, 56-4, and 56-5, fewer than ten months after Kannuu filed its original complaint, *see* Doc. 1.  Courts in this District and other circuits have regularly concluded that this sub-factor weighs in favor of granting a stay where a party files its IPR proceedings within the one-year statutory deadline set forth under 35 U.S.C. § 315(b).  *See, e.g.*, *Rovi Guides, Inc.*, 2017 WL 4876305, at *4 (issuing stay after delay of nearly one year); *ACQIS, LLC*, 109 F. Supp. 3d at 359 (issuing stay after delay of eleven months).  Because Samsung filed its IPR petitions within the statutory deadline, the Court concludes that the timing of Samsung's IPR petitions is unlikely to prejudice Kannuu.

As to the second sub-factor, Samsung sought leave to file its motion to stay on September 28, 2020, *see* Doc. 28, only five days after receiving the last of the PTAB's institution decisions regarding the IPR proceedings, *see* Doc. 56-14 and 56-15.   Courts in this District have concluded that a motion to stay made within a few days of the PTAB's institution decision is "sufficiently prompt," and thus neither "dilatory [nor] likely to give [the moving party] a tactical advantage."  *See Rovi Guides, Inc.*, 2017 WL 4876305, at *4.  Kannuu argues that Samsung could have alerted the Court of its intent to request a stay much earlier than it did.  However, doing so would have been premature, as it was "unclear at [that] stage whether the [PTAB] [would] institute proceedings on any or all of the petitions."  *See CDX Diagnostics*, 2014 WL 2854656, at *4; *see also IOENGINE, LLC*, 2019 WL 3943058, at *6 ("An earlier request for a stay would have been premature, as courts almost invariably deny requests for stays pending IPR proceedings when the stay requests are filed before the IPR is instituted, and a pre-institution request therefore would have been futile.").  Accordingly, the Court concludes that the timing of Samsung's request for a stay was sufficiently prompt and not prejudicial.

Similarly, as to the third sub-factor, the PTAB has already instituted review on the '354 and '393 patents.  Accordingly, the PTAB must reach a final determination in these proceedings "not later than 1 year after the date on which" it issued the notices of the review—*i.e.*, by September 24, 2021.  *See* 35 U.S.C. § 316(a)(11).  Thus, "the status of the IPR proceedings is not likely to cause any undue prejudice or tactical advantage if a stay is granted."  *Rovi Guides, Inc.*, 2017 WL 4876305, at *4.

Finally, as to the fourth sub-factor, the Court must consider the relationship of the parties in determining whether a stay will result in undue prejudice.  "An important factor in determining if a stay will prejudice the plaintiff is whether the parties are direct competitors, because there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."  *Id.* (quoting *CDX Diagnostics*, 2014 WL 2854656, at *4).  Kannuu acknowledges that it does not practice its patents and does not dispute that it is not a direct competitor of Samsung.  Instead, Kannuu briefly argues that the delay associated with the IPR proceedings will harm its interest in its patent rights.  But "without benefit of explanation or support, the Court cannot credit this passing assertion."  *Straight Path*, 2016 WL 6094114, at *3 (noting that non-moving party simply argued that party would suffer unspecified harm to its business).  Because Kannuu is "a patent licensing and enforcement firm, [it] is not (and does not purport to be) a direct competitor of" Samsung.  *Id.*  Accordingly, Kannuu has not shown that it would suffer any prejudice under this sub-factor.

Having considered all four of the prejudice sub-factors, the Court concludes that Kannuu will not be unduly prejudiced by a stay, and Samsung will not be unfairly advantaged.   Because all three of the primary factors weigh in favor of a stay, and in light of the totality of circumstances, the Court concludes that a stay is warranted.

### III.    CONCLUSION

For the foregoing reasons, Kannuu's motion for preliminary injunction is DENIED, Kannuu's motion for leave to file a supplemental First Amended Complaint is DENIED, and Samsung's motion to stay is GRANTED.  The parties' requests for oral argument regarding their respective motions are denied as moot.  Docs. 69 and 77.  This matter is hereby stayed pending resolution of the IPR proceedings regarding the '354 and '393 patents.  The parties are directed to file a joint status report within 48 hours of the PTAB's final written decision.  In that status report, the parties shall update the Court regarding the status of Kannuu's infringement contentions in light of the PTAB's decision and submit an amended proposed discovery schedule.  The Clerk of Court is respectfully directed to terminate the motions.  Docs. 54, 61, 69, 77, and 78.

It is SO ORDERED.

Dated:    January 19, 2021
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.